```
            UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
                   AT CHARLESTON
```

PATRICK MAYS, on behalf
of himself and all others
similarly situated,

      Plaintiff,

v.                                     Civil Action No. 2:22-cv-00418

PEOPLES BANK,

      Defendant.

## MEMORANDUM OPINION AND ORDER

Pending is plaintiff's motion to remand, filed October 25, 2022.  ECF 10.

### I.  Background

On August 22, 2022, plaintiff initiated this action by filing suit in the Circuit Court of Nicholas County, West Virginia.  ECF 1-2.  Plaintiff's single-count complaint alleges a breach of contract claim arising from defendant's practice of charging overdraft fees to its customers on what are called "Authorize Positive, Purportedly Settle Negative Transactions" ("APPSN").  Id. ¶¶ 12, 73–81.

Plaintiff alleges that once a debit card transaction is authorized on an account with positive funds, defendant

"immediately reduces [the] accountholder['s] checking account[] by the amount of the purchase, sets aside funds . . . to cover that transaction, and as a result, the accountholder's displayed 'available balance' reflects that subtracted amount." Id. ¶ 13. Plaintiff claims that despite defendant having sequestered the funds for payment and thereby ensuring the customer will have sufficient funds to cover that transaction, defendant still assesses an overdraft fee on it if, before that transaction is settled by payment, an intervening transaction exceeds the available balance in the account, in which event an overdraft fee is charged on both transactions. The gist of plaintiff's complaint relates to the assessment, in the situation just described, of an overdraft fee on the first transaction for which sufficient funds had been set aside, being the APPSN transaction.[1] Id. ¶¶ 13-18.

---

[1] In McCollam v. Sunflower Bank, N.A., 598 F. Supp. 3d 1104, 1108 2022 WL 1134276 (D. Colo. Apr. 15, 2022), the court provided the following explanation of an APPSN transaction:

> An APPSN Transaction is a debit card transaction that is authorized when an account has sufficient funds to cover the transaction but paid when the account does not have sufficient funds to cover the transaction. For instance, a customer may have an "available balance" of $100 on Monday when a merchant swipes her card and requests a temporary hold of $80. If [the bank] authorizes the transaction, an $80 hold would be put on the account, bringing the "available balance" to $20. On Tuesday, [the bank] may choose to honor a $100 check written by the customer and presented for payment. At this point the account would have an "available balance" of negative $80. Then, on

2

Plaintiff alleges that he is bringing this claim "on behalf of himself and all others similarly situated." Id. ¶ 60. Plaintiff's proposed class is defined as persons who were citizens of West Virginia at the time the action was commenced, and during the applicable statute of limitations, were charged overdraft fees on APPSN transactions. Id. ¶¶ 60–61.

On September 29, 2022, defendant filed its notice of removal. ECF 1. Defendant's notice of removal alleges removal is proper under 28 U.S.C. section 1441 because "this Court has original subject matter jurisdiction over this civil action pursuant to the Class Action Fairness Act [('CAFA')]." Under CAFA, a district court has original subject matter jurisdiction "if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 84-85 (2014); 28 U.S.C. § 1332(d)(5)(B); Scott v. Cricket Commc'ns, LLC, 865 F.3d 189 (4th Cir. 2017).

---

> Wednesday, if the merchant presents the $80 transaction for payment, [the bank] will release the hold, bringing the "available balance" to $0, and pay merchant, bringing the "available balance" and actual balance to negative $80. Thus, at the time this transaction is settled and paid, the account would not have sufficient funds to cover the $80 transaction.

(internal citations omitted) (emphasis in original).

3

Defendant's notice of removal alleges all three requirements are satisfied. ECF 1 ¶¶ 12-37.

In plaintiff's request for remand it is asserted that defendant has failed to show by a preponderance of the evidence that the amount in controversy exceeds $5 million.[2] Plaintiff insists that defendant's contentions in its notice of removal are "speculative 'estimates' and wishful 'potentials.'" ECF 11 at 5-8.

In defendant's response in opposition to the motion to remand, defendant makes three arguments in support of its claim that the amount in controversy requirement is satisfied. First, it contends that "a plain reading of the Complaint" supports a finding that the jurisdictional amount has been met. ECF 14 at 3-7. Next, defendant relies on the affidavit of Mark Augenstein, its Executive Vice-president of Operations, for inferences said to be drawn from its banking records to support a finding that the amount in controversy requirement is met. Id. at 7-10. Finally, defendant asserts that similar litigation has resulted

---

[2] Plaintiff has alleged that only the amount in controversy requirement has not been met. A review of the record shows it is uncontroverted that minimal diversity is satisfied. Additionally, plaintiff has not challenged that the prospective class includes greater than 100 putative members.

in awards which have exceeded the jurisdictional amount. Id. at 11-12.

## II. Governing Standards

As stated above, CAFA confers original subject matter jurisdiction to district courts in actions where "the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." Dart Cherokee, 574 U.S. at 84-85. In instances where a defendant seeks removal of an action, "the defendant's amount in controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." Id. at 87. Indeed, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Id. at 89.

If the plaintiff contests removal, § 1446(c)(2)(B) requires the district court to decide "by a preponderance of the evidence, whether the amount in controversy requirement has been satisfied." Id. While it is the defendant who "bears the burden of demonstrating that removal jurisdiction is proper[,]" Strawn v. AT&T Mobility, LLC, 530 F.3d 293, 297 (4th Cir. 2008) (citing Ellenburg v. Spartan Motors Chassis, Inc., 519 F.3d 192, 200 (4th Cir. 2008)), "both sides submit proof and the court decides, by a preponderance of the evidence," whether the

5

jurisdictional amount has been satisfied.[3]  Scott, 865 F.3d at 194 (quoting Dart Cherokee, 574 U.S. at 88).  Parties may "submit evidence outside the complaint, including affidavits, declarations, and 'summary-judgment-type evidence, relevant to the amount in controversy present at the time of removal.'" Lanham v. Nationstar Mortg., LLC, 169 F. Supp. 3d 658, 665 (S.D.W. Va. 2016) (quoting Allen v. R&H Oil & Gas Co., 63 F.3d 1326, 1336 (5th Cir. 1995)).  Key to "determining whether the amount in controversy requirement is met is not what the plaintiff will actually recover but 'an estimate of the amount that will be put at issue in the course of the litigation.'" Scott, 865 F.3d at 196 (quoting McPhail v. Deere & Co., 529 F.3d 947, 956 (10th Cir. 2008)).

### III.  Analysis

Plaintiff's motion for remand alleges only that the amount in controversy requirement has not been satisfied. Defendant claims this requirement has been satisfied and has

---

[3] In Scott, the Fourth Circuit Court of Appeals explained the party seeking remand is not required to "submit proof."  865 F.3d at 196 n.5.  Instead "a motion to remand challenging the amount in controversy reopens the record _allowing_ both parties to submit evidence."  Id. (emphasis in original).  In instances where "only one party submits evidence [the court] accept[s] it as uncontroverted but must still test whether the responsible party has met its burden."  Id.

advanced the three arguments earlier noted in support of this contention which will be considered in turn.

      A.    Language of Plaintiff's Complaint

In his complaint, plaintiff alleges that Peoples Bank's "improper practices" have "bilked" "millions of dollars" from its customers' accounts. ECF 1-2 ¶ 2. Plaintiff also alleges Peoples Bank's practice of charging overdraft fees on APPSN transactions costs customers "millions of dollars each year." Id. ¶ 20. Plaintiff continues by alleging "the [c]lass consists of thousands of members or more." Id. ¶ 64. In further support of its position, defendant cites to the statute of limitations applicable to plaintiff's breach of contract cause of action as being ten years. ECF 14 at 4.

The two references noted above to "millions of dollars" and "millions of dollars each year" appear in the first sixty paragraphs of the complaint where Peoples Bank is described in paragraph 5 as having "7.2 billion in assets, is headquartered in Marietta, Ohio and maintains branch locations in Ohio, West Virginia, Kentucky, Virginia, Washington, D.C. and Maryland." In paragraph 60 the "proposed class is defined as: All United States citizens who, during the applicable statute of limitations, were charged OD Fees on transactions that were authorized into a positive available balance (the 'Class')."

Consequently, the two above references to "millions of dollars" appear to relate to Peoples Bank at large. It is not until paragraph 61 that it is stated: "Excluded from the class . . . are any individuals who were not West Virginia citizens at the time this action was commenced."

Defendant also attempts to treat plaintiff's allegation in the complaint that the "amount in controversy exceeds $7,500," ECF 1-2 ¶ 8, as being his individual claim, that his claim is "typical" of the class, Id. ¶¶ 64-67, and it extrapolates that a class of only 667 members would exceed the jurisdictional amount. ECF 14 at 4-5.

The only concrete monetary value alleged in plaintiff's complaint is that "[t]he amount in controversy exceeds $7,500 exclusive of interest, costs, and attorneys' fees." ECF 1-2 ¶ 8. Based on this language, defendant assumes that Mr. Mays' individual amount in controversy exceeds $7,500. ECF 14 at 4-5. Defendant then further assumes that Mr. Mays' claim is "typical" of the class and that, at a minimum, the other putative class members' individual amount in controversy must each exceed $7,500. Id. Accordingly, defendant claims a class of only 667 members would be needed to satisfy the amount in controversy requirement. Id.

In support of its position, defendant relies on Peterson v. Allina Health Systems (In re Blackbaud, Inc.), No. 3:20-mn-02972-JMC, 2021 WL 1940581 (D.S.C. May 14, 2021). In In re Blackbaud, the court found defendant had shown the jurisdictional amount under CAFA had been satisfied when defendant multiplied the number of prospective class members by the amount of damages claimed by the individual plaintiff. 2021 WL 1940581 at *5. In this instance, defendant urges the court to apply the same reasoning used in In re Blackbaud. However, In re Blackbaud is distinguishable from this instance as quite clearly the amount in controversy alleged here relates to the claim of the class as a whole and is not indicative of Mr. Mays' individual claim. See ECF 1-2 ¶ 8.

Instead, alleging that the "amount in controversy exceeds $7,500" is simply a state court jurisdictional pleading requirement that appears in the complaint in a three-sentence section on page 2 entitled "Jurisdiction and Venue." It does not purport to indicate that either the individual plaintiff alone or the class is seeking that dollar amount in damages. See W. Va. Code § 51-2-2. Thus, the reasoning from In re Blackbaud is inapplicable. The state court jurisdictional amount, as alleged in plaintiff's complaint, plays no role in showing whether CAFA's amount in controversy requirement has been satisfied.

It is equally clear that plaintiff's individual claim, whatever it is, is alleged in the complaint to be typical of the other claims in the class.[4]  The record is devoid of reliable information concerning how many prospective persons may be in the class.  While it is uncontested that the prospective number of class members exceeds 100, there is no evidence suggesting how large the class might be, but only the allegation in the complaint that there are "thousands" of prospective class members.  The court finds defendant's assumption that the class will contain at least 667 members, each with at least $7,500 in controversy, is purely speculative and unsupported by any evidence.

As earlier noted, when the amount in controversy requirement is challenged, the defendant must submit evidence that allows the court to find by a preponderance of the evidence that the jurisdictional amount is satisfied.  The court finds the general assertions in plaintiff's complaint are insufficient to show by a preponderance of the evidence that the CAFA jurisdictional amount has been satisfied.  Nowhere in the complaint does plaintiff allege with any specificity the amount of damages he is seeking to recover.  In instances such as this, where a plaintiff does not "specify damages, defendants seeking

---

[4] Only to the extent that "they arise out of the same wrongful business practices by Peoples Bank."  ECF 1-2 ¶ 66.

removal may well face difficulty." Caufield v. EMC Mortg. Corp., 803 F. Supp. 2d 519, 527 (S.D.W. Va. 2011) (citing Bartnikowski v. NVR, Inc., 307 F. App'x 730, 739 (4th Cir. 2009) (unpublished)). A plaintiff's decision to "not specifically indicate damages does not relieve the party seeking removal of its burden in proving jurisdiction." Id. at 527.

The court concludes that the allegations in the complaint are insufficient to show by a preponderance of the evidence that the amount in controversy requirement has been satisfied.

### B. The Augenstein Affidavit

Mr. Augenstein, who is Executive Vice President of Operations for Peoples Banks, in Marietta, Ohio, avers in the supporting affidavit filed by Peoples Bank in resisting remand that

> Peoples Bank regularly creates account statements and cardholder activity reports for each account.
>
> Peoples Bank also keeps track of its total overdraft charges for <u>all of its different products</u>.
>
> Peoples Bank does not keep track of . . . the charges at issue in this case.
>
> Peoples Bank[] has determined that its West Virginia customers who could be members of the class have paid an estimated $16,775,665 in overdraft charges.
>
> Of those estimated $16,775,665 in overdraft charges, approximately 79% were based on transactions that could have been authorized into a positive available balance and settled at a negative balance for an

        approximate total of $13,268,760 in overdraft charges
        that could be at issue in this case.

Aff. ¶¶ 5, 6, 7, 9, 10 (emphasis added).

After asserting that the APPSN transactions "could have been" $13,268,780, Mr. Augenstein then admits that the defendant "<u>cannot determine</u> which of the $13,268,760 in overdraft charges were authorized into a positive balance because Peoples Bank does not keep records to reflect such charges." Id. ¶ 11 (emphasis added).[5]

Yet, Peoples Bank filed with its Motion to Dismiss, docketed on October 6, 2022, a record of Mr. Mays' account for the month of April 13 through May 12, 2022, that takes issue with an example used by Mr. Mays in paragraph 59 of his complaint where he alleges that a prior authorized positive debit was settled negative on May 11, 2022. ECF 1-2 ¶ 59. That monthly record reflects no such outcome on May 11, 2022, or at any other time in that monthly period. Rather, the transactions that took place during that monthly period show that each of two over withdrawals on May 2, 2022 resulted in overdraft fees of $35.00 each on May 3, 2022, and each of three over withdrawals

---

[5] The statement is puzzling inasmuch as none of the "overdraft charges were authorized into a positive balance"; rather, it was the debits that were authorized into a positive balance. The affidavit contains the same mistaken understanding in an earlier paragraph. Id. ¶ 7.

on May 10, 2022, resulted in overdraft fees of $35.00 each on May 11, 2022. It is of particular interest that those five customary or conventional over withdrawals merited total overdraft fees of $175.00 but there were no APPSN transactions for that monthly period.

Fatal to defendant's position is that there is not the slightest indication how Mr. Augenstein determined that approximately 79% of the total amount of overdraft charges assessed to West Virginia customers "could have been" APPSN transactions. Without any indication how defendant came to this fanciful figure, his calculation is seen as highly speculative and woefully insufficient to support a plausible showing that the jurisdictional amount has been met. The same can be said of the "estimated" $16,775,665 which is supported solely by his statement that it is "[b]ased on my review of Peoples Bank records over the past ten years."

Mr. Augenstein concludes his affidavit by stating that he reviewed plaintiff's bank records and account statements for "approximately twelve months" (which period he failed to specify, thereby precluding any analysis of the accuracy of his conclusion) and determined:

> For that time period, over 50% of the times when Mr. Mays overdrew his account, it was caused by transactions that were authorized into a positive account balance.

13

Id. ¶¶ 14-15. That is another misstatement inasmuch as a transaction that was authorized into a positive balance obviously did not overdraw the account, although a subsequent debit did.

Setting aside the "over 50%" portion, the remaining near-50% would be applicable to the customary or conventional over withdrawals similar to all those for which overdraft fees were assessed in the April 13 to May 12, 2022 monthly period. On the other hand, the "over 50%," when applied to the twin transactions consisting of the initial APPSN and the subsequent negative debit that overdrew the account, would be split equally between those two components of the twin transactions inasmuch as the overdraft fee is $35.00 regardless of the amount of the over withdrawal.[6] Treating the "over 50%" as 50% and applying

---

[6] The Account Details and Disclosures of Peoples Bank, the terms of which are attached to the complaint, and referred to in paragraphs 30 and 31 of the complaint state as follows:

> OVERDRAFT OPTIONS
>
> \*\*\*
>
> Fees:
> Non-sufficient fund fees, and any additional account-related fees, will be deducted from the available Overdraft Privilege funds. The fee per overdraft item is $35. Accounts overdrawn for three (3) consecutive business days will be assessed a $6.00 fee every third business day until the balance becomes positive.
>
> \*\*\*

the above formula to Augenstein's estimated figure of $16,775,665, the APPSN portion at issue in this case would be limited to one-fourth, being $4,193,916, and less than the over $5,000,000 required by CAFA.

But the Augenstein calculation is both shallow and flawed.  He avers that he reviewed plaintiff's banking records for approximately twelve months, a period he does not disclose and the specifics of which he does not reveal, to determine that 50% of plaintiff's overdrafts were APPSN transactions.  He then projects that figure to the entire class.  There is no evidence showing that 50% APPSN transactions is a typical year for plaintiff's overdraft transactions or for that of any other West Virginia depositor with the defendant during the ten-year period preceding the filing of this action.

The Augenstein affidavit is replete with error, ambiguous statements, an unsupported estimate of $16,775,665, a baseless 79% approximation, an unspecified approximately 12 months of the Mays account that remains undisclosed, and a

---

SCHEDULE OF FEES

\*\*\*

Overdrafts $35.00 (Per Item)

> Accounts overdrawn for three (3) consecutive business days will be assessed a $6.00 fee every third day until the balance becomes positive.

failure to recognize the number and amount of customary or conventional over withdrawals resulting in overdraft fees that have nothing to do with the twin transactions of an APPSN and the quickly following debit for a subsequent withdrawal that overdraws the account, resulting in equal overdraft fees for each component. The latter factor alone renders the 79% figure spurious.[7]

       What is known is the record for the only month for which Peoples Bank produced the account of Mr. Mays, filed in connection with its motion to dismiss. Peoples Bank's disclosure, inadvertent though it may have been, reveals no APPSN transactions for that month in 2022 but, not surprisingly for a rather careless account holder like Mr. Mays, an array of five separate instances of over withdrawals that resulted in five overdraft fees of $35.00 each. That is the only hard evidence Peoples Bank has furnished on the amount in controversy issue presented in this case.

---

[7] If, as Mr. Augenstein projects, 79% of the overdraft charge "were based on transactions that could have been authorized into a positive available balance and settled at a negative balance," another 79% constituted the equal portion of the overdraft charges allotted to the subsequent debits that overdrew the account — a mathematical absurdity.

The court finds that Mr. Augenstein's affidavit fails to show by a preponderance of the evidence that the amount in controversy requirement has been met.

C. Awards in Similar Suits

Defendant claims awards in similar lawsuits establish that the amount in controversy in this case exceeds $5 million. ECF 14 at 11-12. According to defendant, "the court may consider 'amounts awarded in similar cases' in determining the amount in controversy." Id. at 11 (citing Elliot v. Tractor Supply Co., No. 5:14-cv-88, 2014 WL 4187691 (N.D.W. Va. Aug. 21, 2014)). Defendant cites to several cases where district courts across the country have approved settlements in similar overdraft litigation. Id. In response, plaintiff contends that awards in similar cases are not relevant to support a finding that CAFA's jurisdictional amount has been met here. ECF 25 at 8-9. Additionally, plaintiff observes that cases cited by defendant involved "additional theories of liability, not at issue in this case." Id.

Defendant cites to three cases in support of its position. ECF 14 at 11-12. All three cases involved instances where courts approved settlement funds in similar overdraft litigation. See Perks v. TD Bank, N.A., No. 18-cv-11176 (VEC), 2022 WL 1451753 (S.D.N.Y. May 9, 2022) (approving settlement

17

fund of over $20 million); Doxey v. Cmty. Bank, N.A., No. 8:19-cv-919 (MAD/CFH), 2021 U.S. Dist. LEXIS 169735 (N.D.N.Y. Sept. 8, 2021) (approving a settlement fund of over $3 million which represented approximately 39% of defendant's potential damage exposure); Lunsford v. Woodforest Nat'l Bank, No. 1:12-cv-103-CP, 2014 WL 12740375 (N.D. Ga. May 19, 2014) (approving settlement fund of over $7 million).

All three of these cases are distinguishable from the present matter. First, all three involved a large number of settlement class members. The Perks settlement class included at least 80,000 members, 2022 WL 1451753 at *2, while the settlement classes in Lunsford,[8] 2014 WL 12740375 at *7, and Doxey, 2021 U.S. Dist. LEXIS at *17, included 230,000 and 46,000 members, respectively. In this instance, defendant has put forth no evidence concerning how large the potential class might be except for plaintiff's complaint allegation of "thousands."

Next, all three cases involved different and additional theories of liability. For instance, Lunsford

---

[8] The class definition proposed in the Lunsford complaint sought to certify a class of "[a]ll Woodford customers in the United States." ECF 14-5 ¶ 17. In this instance, while the proposed class includes "[a]ll United States citizens", the class specifically excludes all persons "who were not West Virginia citizens at the time this action was commenced. ECF 1-2 at ¶¶ 60-61. Defendant did not provide the complaints filed in either Perks or Doxey.

involved debt re-sequencing, Perks involved the assessment of insufficient fund fees on certain purchases, and Doxey concerned APPSN transactions and the assessment of overdraft fees due to account verification processes. In this instance, plaintiff is only challenging defendant's practice of assessing overdraft fees on APPSN transactions.

The court finds that the cases presented by defendant and the awards therein are plainly insufficient to show the amount in controversy requirement is satisfied here.

## IV. Conclusion

After considering the evidence on which Peoples Bank relies, consisting of allegations in the complaint, the Augenstein affidavit and awards in other cited cases, the court finds that defendant fails to show by a preponderance of the evidence that the over $5 million amount in controversy level has been met. The court further finds by a preponderance of the evidence that the over $5 million amount in controversy CAFA requirement has not been met.

Accordingly, the court is without jurisdiction in this case and the plaintiff's motion to remand is GRANTED.

It is ORDERED that this case is remanded to the Circuit Court of Nicholas County.

The Clerk is directed to transmit copies of this order to all counsel of record and to any unrepresented parties.

ENTER: July 23, 2024

John T. Copenhaver, Jr.
Senior United States District Judge